UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PROVIDENCE YOUTH STUDENT | : | |
| MOVEMENT (PrYSM) | : | C.A. 1:19-cv- |
| *Plaintiff,* | : | |
| | : | |
| V. | : | *Jury trial demanded* |
| | : | |
| JORGE ELORZA, in his official | : | |
| capacity as Mayor of Providence, | : | |
| STEVEN PARÉ, in his official capacity as | : | |
| Public Safety Commissioner, and HUGH | : | |
| CLEMENTS, in his official capacity as | : | |
| Chief of Police, and the CITY OF | : | |
| PROVIDENCE, by and through its Treasurer | : | |
| James Lombardi, III | | |
| *Defendants* | | |

**VERIFIED COMPLAINT**

**I. INTRODUCTORY STATEMENT**

Plaintiff Providence Youth Student Movement ("PrYSM") brings this civil action seeking a declaratory judgment and injunctive relief against Defendants the City of Providence, its Mayor, its Public Safety Commissioner, and its Police Chief. Defendant Mayor Jorge Elorza has allowed the Police Department to create and adopt a policy that enables racial profiling and labeling as "gang members" of Southeast Asian, Black, and Latino youth and adults. In doing so, Defendants have built an "intelligence assessment database," (formerly referred to as the "gang database") that tramples fundamental constitutional rights of the people of Providence, including freedom of speech and association under the First Amendment, and Due Process under the Fifth and Fourteenth Amendments of the United States Constitution.

Moreover, this Gang Database policy, codified as Providence Police General Order 360.10 (EXHIBIT A), exists in clear, unabashed violation of municipal ordinance §18½-4, the Community Safety Act (hereafter "CSA"), (formally titled the Providence Community-Police Relations Act, EXHIBIT B) in that it relies heavily on "association" as the basis of its point system used to classify individuals as gang members.

Through General Order 360.10, Defendants are also acting in contravention of the Rhode Island Constitution, Article I, Sections 2 and 21 and violating R.I. Gen. Law §31-21.2-3, the Ban on Racial Profiling.

## II. PARTIES

1. Plaintiff Providence Youth Student Movement ("PrYSM") is a youth organization based in Providence's Southeast Asian community, whose mission is to mobilize queer Southeast Asian youth, families, and allies to build grassroots power and organize collectively for social justice. PrYSM envisions a strong, healthy Southeast Asian community free from state, street, and interpersonal violence. It is organized as a non-profit corporation under the laws of the State of Rhode Island.

2. Defendant Jorge Elorza ("Defendant Elorza" or "the Mayor") is the Mayor of the City of Providence. Under the Providence Home Rule Charter of 1980 the Mayor has the power and duty "[t]o supervise, direct and control the activities of all departments and agencies of city government to the extent and in the manner provided by this Charter and by the ordinances of the city, and the laws of the state."  Section 302(a).  Defendant Elorza is sued in his official and individual capacities.

3. Defendant Steven Paré ("Defendant Paré") is the Public Safety Commissioner of

the City of Providence.  Under the Providence Home Rule Charter of 1980 he is "charged with and responsible for the enforcement of all laws and ordinances and the promulgation and enforcement of rules and regulations of the police department" (Section 1001(a)(2)) and has "authority to make all rules and regulations necessary for the efficiency, management and direction of the police department." (Section 1001(a)(4)).  Defendant Paré is sued in his official and individual capacities.

4. Defendant Hugh Clements ("Defendant Clements") is the Chief of Police for the City of Providence.  According to the Providence Home Rule Charter of 1980, he functions "as the chief executive officer of the police department."  (Section 1001(a)). At all times relevant to this complaint, Defendant Clements was acting under color of law.  He is sued in his official and individual capacities.

5. Defendant City of Providence ("Providence" or "City") is a municipal corporation duly authorized and organized under the laws of the state of Rhode Island and is sued through its treasurer, James J. Lombardi III, alias, the official designated by R.I.G.L. §45-15-5 to be named in a suit for relief against the City.

### III. JURISDICTION

6. This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343, 1367, 2201 and 2202.

### IV. VENUE

7. Venue is proper in this Court since, on information and belief, all of the Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. §1391. Venue is also proper because a substantial part of the events and omissions giving rise to these claims occurred in the District of Rhode Island.

## V.  STATEMENT OF FACTS

### Southeast Asian Migration and Gang Profiling

8.     After the United States war in Southeast Asia from the early 1960s through 1975, millions of Cambodian, Laotian, Hmong, and Vietnamese families were displaced due to massive bombings, political destabilization, and genocide.

9.     Many of the displaced families spent years in refugee camps, and 1.2 million Southeast Asians were finally granted refugee status and settled in the United States, including in Providence, Rhode Island.

10.    With no mental health resources to address the still-raw trauma of war, genocide, and displacement, families were relocated from refugee camps into the poorest neighborhoods of the City, where African Americans and Latino immigrants were already crowded into substandard housing with poor public services and failing schools.

11.    In response to these conditions, in the 1980's and 1990's some young people became part of street gangs, just as previous generations of migrant and racially oppressed groups had done for physical and emotional survival.

12.    Geographic concentration, large extended families, and isolation from other racial and ethnic groups guaranteed that by the late 1990's, almost every Southeast Asian person in Providence knew someone who was or had been a member of a gang at some point.

13.    Beginning in 2002, PrYSM organized with Southeast Asian youth and their families, bringing together those directly affected by violence. PrYSM staff and youth leaders learned that community members were being identified as "gang members" by Providence Police even when they had no such status.

14. In 2004, then Providence Police Chief Dean Esserman sent a memorandum (#07 Series 2004, EXHIBIT C) to all personnel acknowledging that the Department had created a "Gang Database" with over five hundred (500) individual names and approximately fifty (50) purported "gangs."

15. For most of the past twenty years, "gang membership" designations were only occasionally communicated informally to subjects by officers on the street, often when stopping young people and forcing them to take off their shirts to show their tattoos.

**Plaintiff's Efforts to Win Dues Process for Gang Database Targets**

16. PrYSM youth leaders and staff met with (then) police chief Dean Esserman at least two times in or around 2010 in an attempt to establish minimum due process rights related to the gang database, including the ability to know if one is named to the database and disclosure of the criteria used to add a person to the gang database.

17. Each time the parties met, the police chief refused PrYSM's demands for transparency and accountability.

18. In or around 2011, PrYSM youth shared their concerns about gang profiling by Providence Police with the Judiciary Committee of the Rhode Island House of Representatives. The youth described encounters in which "Gang Unit" police officers stopped Southeast Asian youth and photographed them, even threatening to arrest their friends if any of the youth refused to cooperate with the photography.

19. By 2012, PrYSM youth and adults began working with other community based organizations in Providence, including DARE Direct Action for Rights and Equality and Olneyville Neighborhood Association to create municipal legislation designed to foster safer

communities, free from police violence and racism

20. Dozens of community members directly affected by Providence police misconduct spent dozens of hours in conversation and outreach activities to define and articulate the policy changes they wanted for their city.

21. On Juneteenth (June 19), 2014 eight members of the Providence City Council co-sponsored and introduced the Community Safety Act, a comprehensive ordinance addressing several areas of police practice, including due process and first amendment concerns with the gang database.

22. PrYSM and its community partners continued to provide testimonies and analysis for Council members, to gather community input to inform negotiations around the legislation, and to engage hundreds of community members in civic activities related to the proposed ordinance.

23. At least forty-five (45) organizations, agencies, neighborhood businesses and faith-based groups, as well as hundreds of individuals were involved in the City-wide effort to pass the CSA.

24. During the final weeks before the bill's passage, the City Council convened the Providence Community Safety Act Working Group ("CSA Working Group") to build consensus around final details of the legislation. The City Council appointed two (2) PrYSM representatives to the Working Group.

25. At a meeting of the CSA Working Group on May 25, 2017, Defendant Clements, PrYSM representatives, and other participants engaged in extensive discussion about the use of "association" among criteria for inclusion on the database. The discussion concluded with a

consensus that the language would remain as drafted and as it now appears in the statute.  *See* May 25, 2017 Regular Meeting, Providence Cmty. Safety Act Working Grp.[1]

26.   Finally, on June 1, 2017 the Providence City Council passed the ordinance for a second time, and one week later Mayor Elorza signed the bill into law.  Effective January 1, 2018, it would become illegal for Providence Police to use "[a]ssociation with other people identified as gang members or any substantially equivalent factor" to include a person on the gang database.

### Defendants' Repeated Violations of Local and Constitutional Law

27.   However, as soon as the law took effect, PrYSM discovered that Providence Police had issued a General Order (360.10, Issued 12/10/17) that unequivocally violated the provision forbidding the use of association among gang database criteria.  EXHIBIT D.

28.   On January 3, 2018, PrYSM, through its counsel, wrote to City Solicitor Jeffrey Dana ("Solicitor Dana") informing him of the policy and pointing out the obvious conflict with the statute.  EXHIBIT E.

29.   Solicitor Dana responded within two days by sending a letter stating that the policy had been rescinded and that "[Defendant] Chief Clements and members of the Command Staff of the Providence Police Department, [Defendant] Commissioner Pare, and attorneys from the Law Department are working together to draft a revised Order."  EXHIBIT F

30.   In his January 5 letter, the solicitor further pledged that "[p]rior to the adoption and implementation of such a revised Order, the Providence Police Department will not be maintaining a so-called gang database."

---

[1] Available at providenceri.iqm2.com/Citizens/SplitView.aspx?Mode=Video&MeetingID=6843&MinutesID=5017&FileFormat=pdf&Format=Minutes&MediaFileFormat=M, last viewed July 15, 2019.

31.     Both Defendant Paré and Defendant Clements represented to the Board members of the Providence External Review Authority (PERA) at its meeting on July 31, 2018 there was no gang database at that point in time. *See* Jul. 31, 2018 Regular Meeting at 31:18, Providence External Review Auth.[2]

32.     On May 28, 2019, in response to a public records request under Rhode Island's Access to Public Records Act, R.I. Gen. Law §§ 38-2-1 *et seq.*, the Law Department provided General Order 360.10, Effective Date 12/10/18. EXIBIT B). The information in the policy's caption indicates that it was distributed to all sworn personnel, and that it was to be re-evaluated on June 10, 2019.

33.     On June 10, 2019 the Executive Director of PERA, Providence External Review Authority, sent a letter to Defendant Clements asking that "Policy No. 360.10 again be rescinded until the PERA board has had an opportunity to review and make recommendations, as required by law."[3] EXHIBIT G.

34.     PrYSM sent its own letter to City Solicitor on June 12, 2018 echoing the points of the January 3, 2018 letter, explaining that the policy is almost identical to the one rescinded in January 2018 in violation of the CSA and impinging on First Amendment protected activity, and asking that the City rescind the policy no later than Juneteenth (June 19). EXHIBIT H.

---

[2] http://providenceri.iqm2.com/Citizens/SplitView.aspx___Mode=Video&MeetingID=10717&Format=Minutes last viewed, July 15, 2019. *Defendant Pare:* "We do not have a gang database that's been developed, right now,"; *Defendant Clements:* "There is not, as we're sitting here right now, a gang database."

[3] "The list of criteria used to determine inclusion on the "gang list" or "gang database" shall be public information, *shall be subject to review by the Providence External Review Authority*, and shall not include:
   i) Association with other people identified as gang members or any substantially equivalent factor;
   ii) Race;
   iii) Location of domicile; nor
   iv) Location of encounter." PROV., R.I., CODE OF ORDINANCES § 18 ½ - 4(f)(8) (emphasis added).

35. On June 18, 2019 Solicitor Dana responded with a letter stating that the Law Department would review the policy, but that it was unable to complete the review by the date requested. EXHIBIT I. Upon further inquiry, the solicitor committed to provide a response by July 3, 2019.

36. On July 5, 2019 through counsel and via email, PrYSM requested a response from the City Solicitor to their demand that the policy be rescinded.

37. Solicitor Dana requested a meeting with PrYSM to discuss the issue further.

38. On July 12, 2019 PrYSM representatives Vanessa Flores-Maldonado and Justice Gaines, accompanied by counsel, met with Solicitor Dana and Senior Assistant Solicitor Steven Nelson to review the numerous legal infirmities in the existing policy and again, to request that the policy be rescinded.

39. At the July 12 meeting, counsel for the City indicated that they had understood the December 10, 2018 version of General Order 360.10 to be a draft, and were not aware that the police department had presented it as an approved final policy.

**The Gang Database Policy Violates the First Amendment and Causes Harm.**

40. The current iteration of General Order 360.10 (EXHIBIT A) seeks to use a number of activities protected under the First Amendment of the United States Constitution as a means to count "points" against an individual to determine gang membership. Examples of activities that could put someone at risk of being profiled as a gang member include: Use and/or possession of gang group paraphenalia or identifiers (4 points); Appearance in gang group-related photographs (2 points); Bearing known gang group tattoo or marking (8 points); and

Contributor in gang publications (8 points).

41. The potential immigration impact of gang profiling is demonstrated by collaborative efforts between the Bureau of Immigration and Customs Enforcement ("ICE") and local law enforcement, and ICE agents have admitted freely using usubstantiated accusations of gang membership to assist them in denying bail or seeking removal. (Juliana Hing, "ICE Admit Gang Operations are Designed to Lock up Immigrants," *The Nation,* November 20, 2017, https://www.thenation.com/article/ice-admits-gang-operations-are-designed-to-lock-up-immigrants, last viewed July 15, 2019).[4] siooi

42. Rhode Islanders also risk a ten year sentencing enhancement with misidentification of gang membership, as set forth in R.I. Gen. Law §12-19-39. Under the text of the statute, even a Co-Defendant of an individual who is categorized as a gang member could face the sentencing enhancement, without any more alleged connection to an actual gang.

43. At least one individual, a Cambodian man who sought help from PrYSM, was denied a concealed carry permit for a firearm by the City of Warwick in June, 2018 based on Warwick police learning that Providence Police had included the man in the gang database, despite the fact that the man had never in his life been a gang member.

44. The use of legally unsound criteria increases the risk of unconstitutional seizures, such as happened to eighteen year old Alvin Seng, and his eleven year old sister A.S. on April 4, 2019.  The two Cambodian youth were stopped in their car, without probable cause, by a member of the Providence Police Violent Crimes Task Force (formerly known as the Gang Unit).  The only explanation the youth were given is that they were in a blue car, and Alvin had

---

4   While Defendant City claims not to share information with ICE, Plaintiff's information and belief is that the complex datasharing arrangements with the Rhode Island Fusion Center run by the Rhode Island State Police, and the Fusion Center's ties to the U.S. Department of Homeland Security render that pledge meaningless.

on a Blue Jays jersey. Later police statements revealed that the stop may have had to do with their mere association with a relative whom police suspected of being a gang member.

## VI. Claims for Relief

45. Plaintiff hereby incorporates by reference paragraphs 1 through 44 of this Complaint as if set forth herein, and does so for each and every Count pled.

*Count 1: Restriction on Freedom of Speech, in Violation of the First Amendment of the United States Constitution, and Actionable Under §42 U.S.C. 1983.*

46. Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to the threat of retribution for contribution to "gang publications" have violated Plaintiff's right to freedom of speech by creating a prior restraint, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the First and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983.

*Count 2: Restriction on Freedom of Association, in Violation of the First Amendment of the United States Constitution, and Actionable Under §42 U.S.C. 1983.*

47. Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, have violated Plaintiff's right to freedom of association, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the First and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983.

*Count 3: Restriction on Due Process Liberty Interests, in Violation of the Fifth Amendment of the United States Constitution, and Actionable Under §42 U.S.C. 1983.*

48. Defendants, acting under the color of state law, by their individual and/or

concerted acts and/or omissions, including but not limited to those described herein, have violated Plaintiff's right to due process, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under the Fifth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983.

### Count 4:  Restriction on Freedom of Speech and Assembly, in Violation of Article 1, §21 of the Rhode Island Constitution.

49. Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, violated Plaintiff's right to freedom of speech and assembly, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under Article 1, §21 of the Rhode Island Constitution.

### Count 5:  Restriction of Due Process, in Violation of Article 1, §2 of the Rhode Island Constitution.

50. Defendants, acting under the color of state law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, violated Plaintiff's right to due process, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under Article 1, §2 of the Rhode Island Constitution.

### Count 6: Racial Profiling in Violation of R.I. Gen. Law §31-22.1-3

51. Defendants, acting under color of law, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, engaged in racial profiling in violation of R.I. Gen. Law §31-22.1-3 and actionable pursuant to R.I. Gen. Law §31-22.1-4.

*Count 7: Violations of Prov. Mun. Ord. §18 1/2 -4, the PCPRA or "Community Safety Act"*

52.     Defendants, acting under color of law, by their individual and/or concerted acts and/or omissions, specifically through the adoption and promulgation of General Order 360.10 is in violation of the municipal ordinance PROV., R.I., CODE OF ORDINANCES § 18 ½ – 4 ( formally titled the Providence Community-Police Relations Act).

## VII.  Prayer for Relief

WHEREFORE, Plaintiff hereby prays that this Court grant the following relief:

1. A declaratory judgment that the Defendants, in the manner described herein, violated the First, Fifth and Fourteenth Amendments to the United States Constitution, Article 1, §§2 and 21 of the Rhode Island Constitution, and PROV., R.I., CODE OF ORDINANCES § 18 ½ – 4 (f)(8)(a), specifically the prohibition on the use of association as a criteria for inclusion in the gang database;

2. Injunctive relief requiring Defendants to rescind immediately the current iteration of General Order 360.10 and to desist from adopting any new policy that violates Plaintiff's constitutional rights or the terms of the Municipal Ordinance § 18 ½ – 4;

3. An award of reasonable attorney's fees and costs of litigation to Plaintiff pursuant to 42 U.S.C. §1988 and R.I. Gen. Law §31-21.2-4;  and

4. Such other and further relief as this Court deems just and proper.

## VIII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## IX. Designation of Trial Counsel

Plaintiff hereby designates Shannah Kurland, Esquire, as trial counsel.

**Date: July 16, 2019**

Plaintiff, **Providence Youth Student Movement (PrYSM)**
By its attorney,

/s/ Shannah Kurland_____
**Shannah Kurland, Esq.** (#9186)
149 Lenox Avenue
Providence, RI 02907
Phone: (401) 439-0518
skurland.esq@gmail.com

### VERIFICATION

I, Sarath Suong, a competent person of the full age of majority, declare: I am the Executive Director of Providence Youth Student Movement (PrYSM). I have personal knowledge of the facts set forth in the Verified Complaint, and if called as a witness in this matter, I could and would testify competently to those facts under oath.

I declare under penalty of perjury that the foregoing is true and correct.

7/16/2019_____                            /s/ Sarath Suong_____
Date                                                    Signature, Sarath Suong