UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PROVIDENCE YOUTH STUDENT
MOVEMENT (PrYSM),
    *Plaintiff*

v.    Civil Action No. 1:19-cv-00378-WES-PAS

JORGE ELORZA, alias, in his individual
and official capacity as Mayor of Providence,
STEVE PARÉ, in his individual and official
capacity as Public Safety Commissioner,
HUGH CLEMENTS, alias, in his individual
and official capacity as Chief of Police, and
the CITY OF PROVIDENCE, by and through
its Treasurer, James J. Lombardi, III
    *Defendants*

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND LACK OF SUBJECT MATTER JURISDICTION

Defendants Jorge Elorza, Steven Paré, Hugh Clements, and the City of Providence, by and through its Treasurer James J. Lombardi, submit the following memorandum in support of their Motion to Dismiss Plaintiff Providence Youth Student Movement's (hereinafter, "PrYSM") amended complaint for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction.[1]

I.    **Background**

Plaintiff's amended complaint generally consists of allegations of violations of the United States and Rhode Island Constitutions as well as sections of the Rhode Island General Laws and

---

[1] All Defendants join in section II-a and only Defendant Jorge Elorza joins in section II-b.

Providence Code of Ordinances. See generally, ECF #5. The amended complaint alleges the defendants have violated the foregoing by creating via general order and implementing an intelligence assessment database, colloquially referred to as the "gang database."[2] PrYSM has sued defendants Jorge Elorza, Mayor of Providence, Steven Paré, Public Safety Commissioner, and Hugh Clements, Chief of Police, in both their individual and official capacities as well as the City of Providence by and through its Treasurer. PrYSM specifically asserts the following claims against all defendants: (1) Restriction on Freedom of Speech, in Violation of the United States Constitution, and Actionable Under §42 U.S.C. 1983; (2) Restriction on Freedom of Association, in Violation of the First Amendment of the United States Constitution, and Actionable Under §42 U.S.C. 1983; (3) Restriction on Due Process Liberty Interests, in Violation of the Fifth Amendment of the United States Constitution, and Actionable Under §42 U.S.C. 1983; (4) Restrictions on Freedom of Speech and Assembly, in Violation of Article 1, §21 of the Rhode Island Constitution; (5) Restriction of Due Process, in Violation of Article 1, §2 of the Rhode Island Constitution; (6) Racial Profiling in Violation of R.I. Gen. Law §31-22.1-3; and (7) Violations of Prov. Mun. Ord. §18 ½-4, the PCPRA or "Community Safety Act."[3] ECF #5, ¶¶ 44-51.

## II.  Argument

### a. **The Plaintiff has not alleged facts to establish standing to invoke the powers of the Federal Court.**

All Defendants move pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss this matter for lack of standing and lack of subject matter jurisdiction. When ruling on a motion to dismiss for lack of standing, the court is to "accept as true all well-

---

[2] As of this writing, the general order at issue has been rescinded and is being reevaluated.
[3] The "Community Safety Act" and the "Providence Community-Police Relations Act" refer to the same ordinance, §18 ½-4, the official name of the ordinance being the latter.

2

pleaded factual averments in the plaintiff's [] complaint and indulge all reasonable inferences therefrom in his favor." Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012). Well-pleaded facts, however, do not include the Plaintiff's unsupported conclusions or interpretations of law. Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993).  Further, a district court does not have to accept subjective characterizations, bald assertions, or conclusory descriptions.  Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52-53 (1st Cir. 1990). While the burden on a motion to dismiss is on the moving party, it remains the "responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Warth v. Seldin, 422 US 490, 518 (US 1975); US v. AVX Corp., 962 F.2d 108, 114 (1st Cir. 1992). Further, "where standing is at issue, heightened specificity is obligatory at the pleading stage… The complaint must set forth reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." Draper v. Healey, 827 F.3d 1, 3 (1st Cir. 2016).

To establish Article III standing, the United States Constitution requires that a plaintiff demonstrate an actual case or controversy. AVX Corp., 962 F.2d at 113. The general standing inquiry has three elements. In Lujan v. Defendants of Wildlife, the court summarized:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized… (b) "actual or imminent, not 'conjectural' or 'hypothetical,' "  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. 555, 560–61 (1992) (internal citations omitted).

3

Building on these basic principles of standing, an *organization* can also have Article III standing to assert its own rights or that of its members in certain limited situations. Warth, 422 U.S. at 511. However, an "organization's abstract concern with a subject that could be affected by the adjudication does not substitute for the concrete injury required by Art[icle] III." Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 40 (1976) (an organization's goal of promoting access of the poor to health services would not establish standing on the basis of that goal). Also notable is that "a mere interest in a situation – no matter how deeply felt, or how important the issue – will not substitute for actual injury." American Postal Workers Union v. Frank, 968 F.2d 1373, 1375 (1st Cir. 1992).

An organization can have standing to initiate an action when it is asserting *its own rights*, also known as "organizational standing," whereby the standing analysis would be the same as it would be for an individual, discussed supra. Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-9 (1982); See also, Eagle Rights Center v. Equity Residential, 798 F.Supp.2d 707, 719 (D. Md. 2011). This complained of "injury" can be the organization's diversion of resources, decreases in funding, or the impairment of providing services that would normally be provided but for the actions of a defendant. Havens Realty Corp., 455 U.S. at 378-9; Eagle Rights Center, 798 F.Supp.2d at 724. An organization can also have standing to initiate an action when it is asserting *the rights of its members*, also called "associational standing." Eagle Rights Center,798 F.Supp.2d at 719. An association has standing to bring suit on behalf of its members when 1) its members would otherwise have standing to sue in their own right; 2) the interests it seeks to protect are germane to the organization's purpose; and 3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Hunt v. Washington State Apple Advertising Com'n, 432 U.S. 333, 343 (1977). Standing on behalf of the rights of its

members does not dispense with the constitutional requirement of a "case or controversy," namely the "association must allege that its members or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Warth v. Seldin, 422 U.S. 490, 511 (1975). (Supreme Court affirmed dismissal when the plaintiff association of home builders that challenged a zoning ordinance failed to represent its members engaged in development or construction of residential homes in the area nor did it refer to any specific projects its members were denied because of the ordinance). In other words, the plaintiff association must be able to show that "at least one of its members possesses standing to sue in his or her own right - i.e., that the member can satisfy the three requirements of injury, traceability and redressability." American Postal Workers Union v. Frank, 968 F.2d 1373, 1375 (1st Cir. 1992). In addition, the plaintiff association must actually *identify a member* of its organization that meets these criteria. In Draper v. Healey an advocacy group challenged a Massachusetts regulation that made it illegal to transfer to another certain generations of the Glock handgun as violating the Due Process clause and the Second Amendment. 827 F.3d 1, 2-3 (1st Cir. 2016). Despite the plaintiff organization's argument that it was too early to dismiss it from the action at the pleading stage and before discovery had commenced, the First Circuit was clear in stating:

> "The advocacy group, Second Amendment Foundation, Inc., lacks standing to sue. It seeks to assert associational standing on behalf of its members, which requires, among other things, *that at least one of the group's members have standing as an individual.* To satisfy this requirement, *the association must, at the very least, identify a member who has suffered the requisite harm.* Here, the complainant did not identify any member of the group whom the regulation prevented from selling or purchasing a Glock." (emphasis added)

Id.; See also, Summers v. Earth Island Institute, 555 U.S. 488, 499 (2009).

In the instant matter, it is unclear which standing theory – organizational or associational – upon which PrYSM seeks to ground its amended complaint as the allegations contained therein do not provide sufficient facts to establish either theory, especially in light of the heightened specificity that is required at the pleading stage when standing is at issue. Draper, 827 F.3d at 3. The amended complaint fails to set forth "reasonably definite factual allegations, either direct or inferential, regarding each material element needed to sustain standing." Id. Also, while it is unclear as to which theory PrYSM relies upon, it does appear extremely likely that the theory may, in fact, be associational standing. As evidence thereof, in the claims for relief section of the complaint, it is telling that PrYSM alleges the defendants violated the plaintiff's freedom of speech, right to associate, and the like. ECF #5, ¶¶ 44-51. From these allegations, it is extremely likely that PrYSM intended that *its members'* freedom of speech, association, and the like were impaired based on the other averments in the amended complaint, namely that the criteria used to identify one as a gang member allegedly put *an individual* at risk of misidentification. Id. at ¶ 39. Therefore, it would not make sense that these are the rights of the *organization itself* that plaintiff alleges have been abridged, but instead, the rights of PrYSM's members.

Nonetheless, as to organizational standing, at no point does the amended complaint contain sufficient allegations to establish an injury to PrYSM itself. See generally, ECF #5. In Havens Realty Corp. the complaint contained the following allegation of injury to the organization:

> "Plaintiff HOME has been frustrated by the defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's [sic] racially discriminatory practices."

455 U.S. at 379. No similar averments are contained in the instant amended complaint, such as the impairment of providing other services, the diversion of resources, or a diminishment in funding. See generally, ECF #5. What is required is a "concrete and demonstrable injury to an organization's activities" that is "more than simply a setback to the organization's abstract social interests." Havens Realty Corp., 455 U.S. at 379. This concrete and demonstrable injury to PrYSM's activities is absent from the instant amended complaint. While it does speak about PrYSM's meeting with city officials as well as attending city council meetings and the like associated with the passage of the Providence Community-Police Relations Act in 2017, these engagements amount to PrYSM's passionate interest, advocacy, and lobbying for the passage of the legislation at issue, and an organization's interest and use of resources for advocacy is not synonymous with injury of the constitutional quality. Id. at ¶¶ 16-26; U.S. v. AVX Corp., 962 F.2d 108, 114 (1st Cir. 1992) ("A mere interest in an event – no matter how passionate or sincere the interest and no matter how charged with public import the event – will not substitute for an actual injury.") (Citing Diamond v. Charles, 476 U.S. 54, 62 (1986); See also, Public Citizen, Inc. v. Trump, 297 Supp.3d 6, 37 (D.D.C. 2018) ("Standing is not found when the only injury arises from the effect of the challenged act on the organization's lobbying activities." (Internal citations omitted)).

The amended complaint further discusses letters being sent and meetings between city officials and representatives of PrYSM regarding defects PrYSM perceived existed with the intelligence assessment database connected to its alleged use of "association" as evaluative criteria vis-à-vie the requirements of the recently-enacted legislation. ECF #5, ¶¶ 27-38. Once again, this is tantamount merely to PrYSM's interest and advocacy. It has been said that "a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's

requirements." Diamond, 476 U.S. at 62. In summary, nowhere does the amended complaint detail specifics as to how PrYSM was itself injured, as was the case in Havens Realty Corp., and any general complaints made therein about the intelligence assessment database or the defendants' responses to their inquiries, are tantamount to its passionate interest, advocacy and lobbying efforts, all insufficient to invoke judicial power. See discussion, supra.

Similarly, the amended complaint fails to establish the basis for PrYSM to proceed on an associational standing theory. In order to demonstrate associational standing, PrYSM would have had to show that its members would otherwise have standing to sue in their own right. Hunt, 432 U.S. at 343. In other words, that it can show the member satisfies the actual injury, causation, and redressability thresholds. This carries with it the additional requirement that the plaintiff actually *identify a member* of the association that meets these criteria. Draper, 827 F.3d at 2-3. This PrYSM clearly has not done. See generally, ECF #5.

PrYSM has failed to identify a member who has been injured. There is no mention of a member whose name it alleges has been improperly placed in the intelligence assessment database or a member that has been stopped and questioned because of a perceived improper placement of that individual's name in the database. The amended complaint does allege what PrYSM contends to be the negative consequences of placement on the database in the abstract, without any connection to an actual member or plaintiff, thus demonstrating a lack of any real case or controversy. ECF #5, ¶¶ 40-41. (alleges police share information with the Bureau of Immigration and Customs Enforcement and that enhanced sentencing in criminal matters occurs based solely on inclusion in the database). In fact, the amended complaint does not contain a single allegation or statement of any member of PrYSM ever having an interaction with the Providence Police over his or her name being included in the intelligence assessment database.

See generally, ECF#5. What can be seen as perhaps PrYSM's attempt to rectify this issue is its allegation that an *unidentified* Cambodian man *who sought help from PrYSM* was denied a conceal and carry permit in Warwick based on the inclusion in the Providence Police Department's intelligence assessment database. ECF #5, ¶ 42. Also, the amended complaint alleges a stop of a motor vehicle of an Athan Seng in April of 2019 on the basis of the color shirt he was wearing, the color of his car, and a potential gang affiliation of a family member. Id. at ¶ 43. There is no allegation therein that the unidentified Cambodian man or Mr. Seng were members of PrYSM at the time. The First Circuit upheld a motion to dismiss in U.S. v. AVX Corp. for insufficient allegations relating to establishing associational standing when the plaintiff failed to identify members, failed to mention places of abode, failed to mention the extent or frequency with which any individual used the affected resources, or any other facts demonstrating a concrete injury. 962 F.2d 108, 117 (1st 1992). This is no different than the complaint in the instant matter. Similarly, here there is *no mention* of any actual members of PrYSM anywhere in the amended complaint as suffering the requisite harm, thus assuming PrYSM's theory of standing is associational, the amended complaint must fail.

      b. **Plaintiff failed to plead sufficient facts to establish Supervisory Liability on the part of Defendant Mayor Jorge Elorza.**

Defendant Jorge Elorza moves pursuant Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss this matter for failure to state a claim upon which relief can be granted. Just as in a motion to dismiss for lack of standing, discussed supra, a court must accept as true all of the factual allegations contained in the complaint and must view them in the light most favorable to the non-moving party. Erickson v. Pardus, 551 U.S. 89, 94 (2007). The burden is upon the moving party, here the Defendants, to establish that the Plaintiff can prove no possible facts in support of his claim that would entitle him to relief. Harper v. Cserr, 544 F.2d

1121, 1122 (1st Cir. 1976). The Court must take all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992). Well-pleaded facts, however, do not include the Plaintiff's unsupported conclusions or interpretations of law. Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993). Further, a district court does not have to accept subjective characterizations, bald assertions, or conclusory descriptions. Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52-53 (1st Cir. 1990).

Counts one (1) through seven (7) are general as to all Defendants. Although there is no clearly labeled assertion of a claim labeled "Supervisory Liability," an examination of the amended complaint reveals that each count asserted against Defendant Elorza are in his capacities as a supervisor.[4] As such, all counts need to meet the pleading standards established in Ashcroft v. Iqbal, 556 U.S. 662 (2009). They fail to do so.

In Iqbal, the Supreme Court clarified what a plaintiff must plead to assert a claim for supervisory liability under 42 U.S.C. 1983. The Court began by reiterating the well-established principle that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Id. at 676. (emphasis added) As a corollary to that principle, the Court observed that, "[b]ecause vicarious liability is inapplicable to Bivens and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. (emphasis added); accord Soto-Torres v. Fraticelli, 654 F.3d 153, 158 (1st Cir. 2011). "Absent vicarious

---

[4] The amended complaint reads as follows: "2. Defendant Jorge Elorza ("Defendant Elorza" or "the Mayor") is the Mayor of the City of Providence. Under the Providence Home Rule Charter of 1980 the Mayor has the power and duty "[t]o supervise, direct and control the activities of all departments and agencies of city government to the extent and in the manner provided by this Charter and by the ordinances of the city, and the laws of the state." ECF #5, ¶ 2. The amended complaint reads in section 1 that "Defendant Mayor Elorza has allowed the Police Department to create and adopt a policy that enables racial profiling and labeling as 'gang members…'" ECF #5. The only other time Defendant Elorza is mentioned by name in the amended complaint is when it states that on June 1, 2017 "Mayor Elorza signed the [Providence Community-Police Relations Act] into law." ECF #5, ¶ 26.

10

liability, each Government official, his or her title notwithstanding, is only liable <u>for his or her own misconduct</u>." <u>Iqbal</u>, 556 U.S. at 677 (emphasis added). In applying that rule to the case, the Court soundly rejected the notion that a supervisor's mere knowledge or acquiescence in a subordinate's actions could serve as the basis for a supervisory liability claim under §1983. <u>Id</u>. (rejecting argument that supervisors "can be liable for 'knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees'").

In Counts one (1) through seven (7) as well as the corresponding allegations, PrYSM does not allege a single, specific act or instance of misconduct on the part of Defendant Elorza, aside from the fact that he supervises, directs and controls the activities of all departments and agencies of city government. <u>See</u> <u>footnote #4</u>, <u>supra</u>. The complaint does not even include an allegation that Defendant Elorza knew of the police department policy at issue; which, even if it stated he did, would be insufficient. <u>See</u> <u>Iqbal</u>, 556 U.S. at 677 (rejecting mere knowledge and acquiescence as basis for supervisory liability claim). It alleges nothing of Defendant Elorza's involvement aside from his job as a "supervisor" per the Home Rule Charter. This is vicarious liability in its purest form. Because Defendant Elorza can only be liable for his "own individual actions" and for his "own misconduct," Counts one (1) through seven (7) fail to state a claim for relief against Defendant Elorza and must be dismissed. <u>See</u> <u>Iqbal</u>, 556. U.S. at 676-7; <u>Soto-Torres</u>, 654 F.3d at 158.

### III.     Conclusion

Therefore, based on the foregoing, the Defendants respectfully request that this Honorable Court grant its motion to dismiss in part II-a as to all Defendants or otherwise in part II-b as to Defendant Elorza.

DEFENDANTS,
By their Attorneys,

JEFFREY DANA
CITY SOLICITOR

/s/Steven B. Nelson
Steven B. Nelson, Esq. (#8142)
/s/Sharon G. Garner
Sharon Gilmore Garner, Esq. (#7246)
Attorneys for Defendants
City of Providence
City Solicitor's Office
444 Westminster Street, Suite 220
Providence, RI  02903
snelson@providenceri.gov
sgarner@providenceri.gov
(401) 680-5333
(401) 680-5520 (fax)

DATED:  October 17, 2019

Certificate of Service

I hereby certify that on this 17th day of October, 2019, I filed this document electronically and that it is available for viewing and downloading from the ECF system.

/s/ Steven B. Nelson