UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**PROVIDENCE YOUTH STUDENT
MOVEMENT (PrYSM),**
  *Plaintiff*

v.              Civil Action No. 1:19-cv-00378-WES-PAS

**JORGE ELORZA, alias, in his individual
and official capacity as Mayor of Providence,
STEVE PARÉ, in his individual and official
capacity as Public Safety Commissioner,
HUGH CLEMENTS, alias, in his individual
and official capacity as Chief of Police, and
the CITY OF PROVIDENCE, by and through
its Treasurer, James J. Lombardi, III**
  *Defendants*

### DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**I.  Introduction**

  The Defendants submit this reply to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss.[1] See generally, ECF 10-1.

**II.  Argument**

  As stated in Defendants' original memorandum in support of its motion to dismiss, an organization can have standing to sue only if it alleges sufficient facts to support organizational or associational standing. ECF 9-1, at 4. Organizational standing focuses on whether the *organization itself* has been injured, and associational standing focuses on whether, and under what circumstances, the organization can assert the rights of its members. Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-9 (1982); Hunt v. Washington State Apple Advertising Com'n,

---

[1] The Plaintiff appears to concede that Defendant Jorge Elorza can be dismissed from the instant action. See ECF 10-1, at 1, FN 1.

432 U.S. 333, 343 (1977).  In this case, the Plaintiff's amended complaint does not allege sufficient facts to support standing under either principle.

The Plaintiff argues in its response that its amended complaint does contain sufficient facts to maintain the lawsuit under an organizational standing theory. ECF 10-1, at 6-8; See also ECF 5, ¶16-26. However, the Court should not consider the time spent by the Plaintiff in trying to get the Providence Community-Police Relations Act (hereinafter referred to as "the Act") passed as evidence of a cognizable injury for purposes of standing analysis. The Plaintiff details the steps taken by the organization over the course of nine (9) years in advocating that the Act be adopted by the Providence City Council both in its amended complaint and in its response. Id. However, courts have stated that organizational standing should not be conferred upon a plaintiff for expenses related to an organization's lobbying activities, for pure issue-advocacy, or for an organization's use of resources for advocacy. See Public Citizen v. Trump, 297 F.Supp.3d 6, 37 (D.D.C. 2018) (discussing the cases in the D.C. Circuit to address this issue). Essentially, the implementation of the intelligence assessment database is the main subject matter of this litigation, not the Plaintiff's efforts and perceived difficulties in securing the passage of municipal legislation.  It would be untenable to confer Constitutional standing upon a plaintiff merely because it utilized organizational resources to lobby and advocate for legislation. To do so would be to open the door to litigation at every turn when an organization's lobbying and advocacy efforts to pass legislation do not turn out the way the group intended. Simply put, paragraphs sixteen (16) through twenty-six (26) of the amended complaint merely detail the Plaintiff's advocacy efforts in securing the passage of the Act, which not only do not relate to the actual subject of the litigation (the alleged policy surrounding the intelligence assessment database), but also should not be considered a basis for invoking organizational standing.

As stated in its initial memorandum, it is the Defendants' position that all of the Plaintiff's allegations fall within this category of advocacy efforts, passionate interest in an event and/or lobbying, which are not a basis for organizational standing. See ECF 9-1, at 6-8. If the Court views the Plaintiff's allegations in paragraphs twenty-seven (27) through thirty-eight (38) as going beyond mere advocacy, the Defendants maintain that this alleged "injury" ultimately would not be of a significant quantity or quality to constitute an actual injury in fact.

The Plaintiff states in its opposition memorandum that its alleged efforts to notify the Defendants of what it perceived as a flawed policy took over an eighteen (18) month time period as well as effort by multiple staff members to conduct research, analysis, writing, editing, phone calls, emails, and reading, which allegedly diverted "scarce person-hours" away from other things the organization was pursuing. This is plainly exaggerated. ECF 10-1, at 7. The Plaintiff's actual efforts amounted only to two (2) letters, one (1) meeting, and one (1) public records request by approximately three (3) individuals affiliated with PrYSM,[2] hardly the "concrete and demonstrable injury to the organization's activities" contemplated by the Supreme Court in Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982). PrYSM's mission of "mobiliz[ing] queer Southeast Asian youth, families, and allies to build grassroots power and organize collectively for social justice" was not "perceptibly impaired" in the least by its actual efforts related to the actual police policy at issue and outlined above. See Havens Realty Corp, 455 U.S. at 379; ECF 5, ¶ 1. Indeed, the amended complaint does not speak to any impairment of providing other services, diversion of resources, or a diminishment of organizational funding, nor would it be expected to from the *de minimis* actions taken by three affiliates of the Plaintiff *after* the passage of the Act.

---

[2] It should be noted that one of the letters – excluding the two previously mentioned - alleged to be sent to the City of Providence during this time was sent by the Executive Director of the Providence External Review Authority and *not* by anyone affiliated with PrYSM. See ECF 5, ¶33.

In its opposition memorandum, the Plaintiff fails to address the glaring deficiency in its complaint as it pertains to associational standing, namely, that the complaint does not identify a member of the organization who has suffered the requisite harm and otherwise has standing as an individual. Draper v. Healey, 827 F.3d 1, 3 (1st Cir. 2016). The Plaintiff attempts to brush off this deficiency by candidly stating that, "The Complaint does reference, without defining, 'community members', 'youth leaders and staff', 'PrYSM youth', and illustrates their participation in the organization." (Emphasis added) ECF 10-1, at 9. This falls far short of the requirement that "the association must, at the very least, identify a member who has suffered the requisite harm." Draper, 827 F.3d at 3 (Gun right advocacy group lacked associational standing to sue on behalf of their members because of their failure to identify at least one member who had standing as an individual).

It is a long standing legal principle that normally "one may not claim standing [] to vindicate the Constitutional rights of some third party." Singleton v. Wuff, 428 U.S. 106, 114 (1976). The Plaintiff argues that even if the amended complaint does not meet the prerequisites to establish organizational or associational standing theories, the doctrine of *jus tertii,* or third party standing, would allow the court to look beyond the normal standing requirements. Generally speaking, the court will look to two factors to determine if third party standing is appropriate. First, the court asks whether the right of the third party is "inextricably bound up with the activity the litigant wishes to pursue;" second, the court evaluates "the ability of the third party to assert his own right." Singleton, 428 U.S. at 114-117. In its amended complaint, the Plaintiff invokes Singleton to support its argument that third party standing should apply in the instant matter, but it is patently apparent that while third party standing was appropriate in Singleton, it has no bearing whatsoever on this case.

The Singleton case involved two physicians who filed suit on behalf of themselves and their patients challenging a federal law cutting Medicare payments to those patients seeking abortions. Id. at 108. The Court easily determined that the physicians themselves had standing since they, as medical professionals, suffered a concrete injury from the application of the challenged statute. Id. at 113. Ultimately the Court further found that the application of third party standing allowing the physicians to assert the rights of their patients was also proper. Id. at 118. With respect to the first factor discussed above, that being the close relationship between the litigant and the party whose rights are being asserted and whether the rights are "inextricably bound up,"' the Court looked to the confidential relationship between the doctor and patient, the fact that the decision to have an abortion is one in which the physician is intimately involved, and the fact that a woman could not safely secure an abortion without the aid of a physician. Id. at 115-117; citing Griswold v. Connecticut, 381 U.S. 479, 85 (1965). In relation to the second factor discussed above, that being the ability of the third party to assert his or her own rights, the Court in Singleton indicated that a woman may be chilled from asserting her rights by the very privacy of the decision to obtain an abortion in the first place as well as the possibility of a pregnancy, by its nature, of being "capable of repetition yet evading review," creating difficulty for a pregnant woman to assert her own rights. Singleton, 428 at 117.

Individual members of PrYSM do not share a relationship with their organization anywhere close to that of a doctor/patient relationship in which the patient seeks highly confidential and personal medical advice about their health and reproductive rights.. Furthermore, it is essential for a woman to have a competent and skilled physician to perform an abortion that does not pose serious health risks; there is no similar "need" for members of PrYSM that necessitates

5

organizational involvement. Finally, unlike in <u>Singleton</u>, there is no impediment or "chill" to an individual member of PrYSM asserting his or her own rights in litigation.

### III. Conclusion

Therefore, based on the foregoing, the Defendants respectfully request that this Honorable Court grant its motion to dismiss.

DEFENDANTS,
By their Attorneys,

JEFFREY DANA
CITY SOLICITOR

/s/Steven B. Nelson
Steven B. Nelson, Esq. (#8142)
/s/Sharon G. Garner
Sharon Gilmore Garner, Esq. (#7246)
Attorneys for Defendants
City of Providence
City Solicitor's Office
444 Westminster Street, Suite 220
Providence, RI  02903
snelson@providenceri.gov
sgarner@providenceri.gov
(401) 680-5333
(401) 680-5520 (fax)

DATED:  November 14, 2019

### Certificate of Service

I hereby certify that on this 14th day of November, 2019, I filed this document electronically and that it is available for viewing and downloading from the ECF system.

/s/ Steven B. Nelson